FILED

12/31/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0549

DA 23-0549

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 321

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MATTHEW JASON WELCH,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 20-1434
Honorable Donald Harris, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender, Jeff N. Wilson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Margaret R. Gallagher, Deputy County Attorney, Billings, Montana

          Submitted on Briefs:  December 11, 2024

                Decided:  December 31, 2024

Filed:

_____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Matthew Jason Welch appeals from a May 2, 2023 Order Denying Motion to Withdraw Guilty Plea. The District Court held that there was no good cause for Welch to withdraw his plea. We affirm in part and reverse in part.

¶2      We restate the issue on appeal as follows:

*Did the District Court err when it found there was no good cause to withdraw Welch's guilty pleas?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      On April 20, 2021, the State charged Welch by amended information with six counts of Deceptive Practices, in violation of § 45-6-317, MCA, and four counts of Theft by Deception, in violation of § 45-6-301(2)(a), MCA. As relevant here, a person convicted of Deceptive Practices faces a prison term not to exceed three years if the value of the property exceeds $1,500 but does not exceed $5,000. Section 45-6-317(2)(b), MCA.[1] A person convicted of Deceptive Practices where the value of the property exceeds $5,000 faces a prison term not to exceed 10 years. Section 45-6-317(2)(c), MCA. Welch faced 10 years for four of his Deceptive Practices charges and three years for two of the charges. A person convicted of Theft faces a prison term not to exceed three years if the value of the property exceeds $1,500 but does not exceed $5,000. Section 45-6-301(7)(b)(i), MCA. A person convicted of Theft where the value of the property exceeds $5,000 faces a prison term not

_____

[1] The parties do not address the remaining statutory language allowing higher prison sentences for second or third offenses of Deceptive Practices or Theft. *See* §§ 45-6-301(7)(b)(i), -317(2)(b), MCA.

to exceed 10 years. Section 45-6-301(7)(b)(ii), MCA. Welch faced 10 years for two counts of Theft by Deception and 3 years for two counts.

¶4 On January 20, 2022, the State and Welch entered a non-binding plea agreement (Agreement) pursuant to § 46-12-211(1)(c), MCA, whereby Welch pleaded guilty to all counts. A non-binding plea agreement pursuant to § 46-12-211(1)(c), and (2), MCA, does not allow a defendant to withdraw their guilty plea because the court rejects the parties' sentence recommendation. On the other hand, a binding plea agreement pursuant to § 46-12-211(1)(a)–(b), and (2)–(4), MCA, allows a defendant to withdraw their guilty plea if the court rejects the plea agreement. *See, e.g.*, *State v. Collins*, 2023 MT 78, ¶¶ 62–63, 412 Mont. 77, 528 P.3d 1106 (Sandefur, J., Dissenting).

¶5 Welch initialed 33 separate paragraphs of the Agreement, several of which are particularly relevant to this appeal:

- Paragraph 14: "I understand that a plea agreement is an agreement between *a Defendant and a Prosecutor* that in exchange for a particular plea, the prosecutor will *recommend* a particular sentence . . . ." (Emphasis added.)

- Paragraph 15: "I understand that the Court may not participate in the making of such an agreement nor is the Court bound by the Agreement pursuant to **Mont. Code Ann. § 46-12-211(1)(c).**" (Emphasis in original.)

- Paragraph 16: "I understand the Judge is not bound by any recommendations and can impose any sentence up to the maximum penalties for the above-listed offense(s). *I understand I will not be allowed to withdraw my plea in the event the Judge rejects this Agreement.* I understand that if the Court rejects the sentencing recommendation, I could be sentenced to the maximum punishments allowed by the applicable laws." (Emphasis added.)

- Paragraph 17: "I understand that the sentence to be imposed is within the sole discretion of the sentencing judge . . . ."

3

- Paragraph 18: "I understand that if the Court does not impose the sentence recommended by the Prosecutor, the Court is not required to allow me to withdraw my plea of Guilty."

- Paragraph 22: "I have considered the most severe sentence that could be imposed . . . ."

¶6 The first and second pages of the Agreement correctly indicated the maximum possible prison sentences Welch faced for each count. Welch faced up to 10 years at Montana State Prison (MSP) for six of the counts and up to three years MSP for the remaining four counts for a total of 72 years MSP.

¶7 In exchange for his guilty plea, the parties agreed to recommend 10 years Department of Corrections (DOC) commitment with five suspended for each of the 10 counts with counts one through five running concurrently to each other but consecutive to counts six through ten. The State thus recommended a net sentence of 20 years DOC with 10 suspended. However, the recommendations were erroneous for the four counts that had maximum three-year sentences.

¶8 The District Court sentenced Welch on March 1, 2022. The court rejected the parties' recommendations and sentenced Welch to 10 years MSP with 5 suspended for each of the 10 counts, each of which was to run consecutively, for a net sentence of 50 years MSP with 50 suspended.[2] As relevant here, Welch appealed the four illegal sentences. We dismissed the appeal based on a stipulation of the parties and remanded to the District Court to, in pertinent part, resentence Welch on the four counts with maximum three-year

---

[2] Welch pleaded guilty to a seventh Deceptive Practices charge. This charge was dropped at sentencing because he had already been sentenced for the same conduct in another county. It will not be discussed herein.

4

sentences "within the statutory parameters for those offenses." *State v. Welch*, No. DA 22-0215, Order (Mont. Oct. 4, 2022).

¶9 Before resentencing, Welch moved the District Court to allow him to withdraw his guilty plea to all 10 counts as involuntary, which the District Court denied. At resentencing, the District Court resentenced Welch only on the four illegal sentences, leaving 30 years MSP with 30 suspended from the original lawful sentence on the remaining six counts. The District Court resentenced Welch to 3 years DOC for each of the four counts, all to run consecutively. In total, Welch had a net sentence of 30 years MSP with 30 suspended and 12 years DOC.

¶10 Also relevant to the appeal now before us, the court's original judgment ordered restitution in Count Four of $6,362 and in Count Eleven of $5,078. However, the amended judgment reflected restitution of $6,363 in Count Four and $6,249 in Count Eleven.

¶11 Welch appeals the denial of his motion to withdraw his guilty pleas and the restitution ordered in the amended judgment for Counts Four and Eleven.

## STANDARD OF REVIEW

¶12 We review a denial of a motion to withdraw a guilty plea de novo. *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352, 114 P.3d 254. Whether a plea was entered voluntarily is a mixed question of law and fact that we review de novo. *Warclub*, ¶ 17.

5

**DISCUSSION**

¶13 *Did the District Court err when it found there was no good cause to withdraw Welch's guilty pleas?*

¶14 At any time within one year after the judgment becomes final, a district court may permit a guilty plea to be withdrawn for good cause shown. Section 46-16-105(2), MCA. "Good cause" includes the constitutional requirement that a guilty plea be voluntary and intelligent. *State v. Deserly*, 2008 MT 242, ¶ 11, 344 Mont. 468, 188 P.3d 1057, *overruled in part on other grounds by State v. Brinson*, 2009 MT 200, ¶ 9, 351 Mont. 136, 210 P.3d 164. "'[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand *unless induced by . . .* misrepresentation (including unfulfilled or unfulfillable promises) . . . .'" *Deserly*, ¶ 12 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)) (emphasis added).

¶15 Welch argues that his guilty pleas were not voluntary because he was induced into entering the guilty pleas by an illegal sentence that could not be performed due to its illegality. In *Deserly*, we adopted a general rule from other jurisdictions: a defendant who has entered a guilty plea pursuant to a plea bargain which contemplates a particular sentence will be allowed to withdraw the guilty plea if it is subsequently determined that the sentence is illegal or unauthorized. *Deserly*, ¶ 16.

> There can be no plea bargain to an illegal sentence. Even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law. Thus, when a defendant has entered a plea bargain contemplating an illegal sentence, the defendant is generally entitled to withdraw the guilty plea. Because the plea bargain is based on a promise the trial court lacks authority to fulfill, and the defendant *was*

6

*induced to plead guilty by that promise*, plea withdrawal is necessary to return the parties to their initial positions.

*Deserly*, ¶ 16 (quoting *United States v. Greatwalker*, 285 F.3d 727, 729–30 (8th Cir. 2002)) (emphasis added).

¶16    In *Greatwalker*, the court, the U.S. Attorney's office, and the defendant agreed to a binding 35-year sentence, notwithstanding that the statute dictated a sentence of either death or life imprisonment for the offense.  285 F.3d at 728–29.  "Greatwalker was *induced to plead guilty by the unfulfillable promise that he would receive a sentence below the statutory minimum for his offense.*"  *Greatwalker*, 285 F.3d at 730 (emphasis added).  Nevertheless, *Greatwalker* recognized exceptions to the general rule, which we acknowledged in *Deserly*, ¶¶ 21–22, but concluded were not necessary to apply there because the State had already withdrawn from the plea agreement:

> Withdrawal of the plea may be unnecessary when the agreed-on sentence *exceeds* the sentence authorized by law and [(1)] the government accepts a sentence reduced to the legal term, [(2)] when the sentence can be reconciled with the plea agreement or otherwise corrected to give the defendant the benefit of the bargain, or [(3)] when the defendant is willing to accept a legal sentence in place of the promised one.

*Deserly*, ¶ 21 (quoting *Greatwalker*, 285 F.3d at 730) (emphasis added).

¶17    We hold that this case presents appropriate circumstances to adopt and apply the first exception to the general rule that we acknowledged in *Deserly*.  Both factors are easily met here.  The agreed upon sentence clearly exceeded the sentence authorized by law.  And the State accepts a sentence reduced from that agreed upon to one within the legal term.

¶18    The Dissent, ¶ 32, would change the plain meaning of the *Greatwalker* exceptions by removing a comma between the first and second exceptions and adding an "and,"

7

effectively combining two disjunctive exceptions into one conjunctive exception. In addition to changing the plain meaning of the three recognized exceptions, this reinterpretation of the *Greatwalker* exceptions is in discord with other authority. In *Deserly*, ¶¶ 16 and 21, we cited to an American Law Report collecting cases discussing the general rule and its exceptions. *See* Christopher Vaeth, *Guilty Plea as Affected by Fact that Sentence Contemplated by Plea Bargain is Subsequently Determined to be Illegal or Unauthorized*, 87 A.L.R.4th 384 (1991). Section two of this report summarizes the disjunctive aspect of the recognized exceptions. First, it discusses a situation where the state "is given the option of retaining the conviction founded on the guilty plea by accepting a sentence reduced to a legal term. . . . If the State does not exercise *its option*, *then* the defendant is entitled to withdraw the guilty plea." (Emphasis added.) It adds no other requirements for this exception to apply. For example, in *Sedell v. State*, 224 So. 3d 885, 886 (Fla. Dist. Ct. App. 2017), the state and defendant agreed the negotiated sentences were illegal because they exceeded the statutory maximums. Without discussion of any other factors to apply, the court remanded to "impose sentences . . . within the statutory maximum of fifteen years *if the [s]tate agrees* to resentencing. If the [s]tate does not agree, *then* Sedell should be permitted to withdraw his plea." *Sedell*, 224 So. 3d at 887 (emphasis added); *accord People v. Henderson*, 145 A.D.2d 676, 677 (N.Y. App. Div. 1988) (no breach of plea agreement where lesser sentence imposed than agreed to). The exception requires only that the State agree to a reduced sentence within the court's lawful authority. The report then goes on to discuss other recognized exceptions, each under their own section headings, including the exception the Dissent would like to combine here with the

8

first *Greatwalker* exception, which is its own, separate exception. *See, e.g.*, *In re Williams*, 583 P.2d 1262 (Wash. Ct. App. 1978).

¶19 Welch argues that the first exception cannot be met because "the State had no choice but to accept three-year sentences." But that is not the case. The State could have stipulated to Welch's motion to withdraw his pleas. Or the State presumably could have argued for a sentence of five years for Welch's second conviction of Theft and Deceptive Practices. *See* §§ 45-6-301(7)(b)(i), -317(2)(b), MCA (allowing a prison term "not to exceed five years" for a person convicted of a second offense under each section); *see also State v. Strong*, 2015 MT 251, ¶ 21, 380 Mont. 471, 356 P.3d 1078 (allowing simultaneous stacked charges where statutory language did not require a prior conviction but merely a "second or subsequent offense" as here). The State instead chose to accept a sentence reduced from the one it agreed to recommend, which was within the court's lawful sentencing authority.

¶20 Welch also argues that the State's acceptance of a lawful three-year sentence failed to provide him any benefit he bargained for in the original plea agreement. This is also inaccurate. The Dissent also takes issue with the perceived fact that Welch "received nothing" in exchange for his guilty plea. Dissent, ¶¶ 34, 36, 38. However, the Dissent correctly notes that "'[w]hat occur[s] subsequent to [the] change of plea does not determine whether the plea was voluntary at the time it was entered.'" Dissent, ¶ 30 (quoting *Deserly*, ¶ 18). Yet subsequent facts are what the Dissent relies upon to determine that Welch received nothing in exchange for his guilty plea. We instead look at the benefits that Welch sought—and received—from the State in exchange for his guilty plea. First, the parties

agreed to recommend 10 years DOC with five suspended for all counts where 10 years MSP was the maximum sentence. A recommendation for a DOC sentence instead of an MSP sentence can serve as a strong inducement for people in deciding to plead guilty. *See, e.g.*, *State v. Bekemans*, 2013 MT 11, ¶ 49, 368 Mont. 235, 293 P.3d 843 (highlighting that an MSP sentence must be served in a prison facility whereas a DOC sentence may be served someplace other than a prison facility). The court rejected the State's recommendation of a DOC commitment. However, the court did suspend five years of each count, which reduced Welch's potential MSP sentence by 30 years. Additionally, the State agreed to recommend—and did recommend—that the first five counts and the last five counts would run concurrently but consecutive to each other. The State also recommended concurrent sentences at resentencing, continuing to give Welch the benefit of his bargain. That the District Court chose to reject the State's recommendation does not deprive Welch of the benefit he bargained for and received, which was the State's sentencing *recommendation*. The State, rather than "offer[ing] nothing in return," Dissent, ¶ 36, continued to provide Welch with the benefit of his bargain upon resentencing—namely a recommendation of concurrent sentences and a DOC commitment. That the State accepted the maximum three-year sentence does not deprive Welch of his other bargained-for benefits or change the fact that the State was now recommending a *lower* sentence than Welch agreed to accept.

¶21 As listed above, Welch was well aware that the court was not bound by the State's recommendations and could impose any lawful sentence, including that all counts could run consecutive to each other, as the Agreement stated a minimum of four times.

10

Specifically, paragraphs 16 and 18 of the Agreement made clear that the court was not bound by the State's recommendations, and Welch would not be allowed to withdraw his guilty plea if the court rejected it.

¶22 Nor, as Welch argues, does the first *Greatwalker* exception require Welch's agreement to apply. The defendant's agreement is considered under the third *Greatwalker* exception, which we do not rely upon here. There are only two requirements under the first *Greatwalker* exception: (1) the parties agreed to a sentence in excess of that authorized by law, and (2) the *government* accepts a sentence reduced to the legal term.

¶23 The *Greatwalker* exception makes logical sense. The general rule applies because someone who pleads guilty in exchange for a term of years *lower* than a statutory minimum is induced by such a promise. However, if a defendant would agree to a plea deal to recommend a sentence *higher* than a statutory maximum, then they are unlikely to have been induced to plead guilty by that longer sentence. Welch ignores that the general rule stems from the fact that a defendant bargaining for an illegal sentence is generally induced to do so by terms which are better than those authorized by law. Where that is not the case, the logic of the general rule does not apply. Here, Welch agreed to a recommendation of five years DOC with five years suspended (though ultimately a sentence unauthorized by law). It follows that he would also agree to a recommended three-year DOC sentence. Welch echoes this sentiment in briefing: "Of course [Welch] preferred a three-year sentence over a ten-year sentence." While there may be facts a defendant could show as to why they were induced to plead guilty to a longer sentence rather than a shorter sentence, this is not that case. Welch points to no facts that show he was induced to plead guilty by

11

a longer sentence than that ultimately recommended and accepted, which was a shorter, lawful sentence. A maximum three-year sentence rather than the five-year sentence that Welch originally agreed to put Welch in a better position than if his initial Agreement was legally enforceable. Ultimately, it was the judge that rejected the Agreement but nevertheless imposed a sentence within the parameters of state law.

¶24 Finally, Welch and the State disagree on whether Welch preserved his ineffective assistance of counsel (IAC) arguments from the District Court. Regardless, his argument fails. Welch must show, in part, that but for counsel's deficient performance, he would not have entered a guilty plea. *See State v. Prindle*, 2013 MT 173, ¶ 17, 370 Mont. 478, 304 P.3d 712. For the same reasons as above, Welch has not shown that he would not have entered a guilty plea if the State had agreed to recommend only a three-year sentence as opposed to the five-year sentence for each of the four counts. Welch was not prejudiced under these facts.

¶25 Welch also argues (and the State concedes) that we should remand to the District Court to correct the restitution imposed in Counts Four and Eleven to reflect what the court orally pronounced. We agree. *See State v. Hammer*, 2013 MT 203, ¶ 27, 371 Mont. 121, 305 P.3d 843. We remand to the District Court to amend the restitution in Counts Four and Eleven consistent with its oral pronouncement.

## CONCLUSION

¶26 Where a plea agreement contemplates a sentence in excess of statutory authority, the State agrees to a reduced sentence, and the defendant cannot show that they were

induced by the longer sentence such that a shorter sentence would not have induced them to plead guilty, there is no good cause to withdraw a guilty plea.

¶27 Affirmed in part and reversed in part. We remand to the District Court to correct the Amended Judgment to reflect the appropriate restitution.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Ingrid Gustafson, dissenting.

¶28 I dissent to the Court's finding that there was no good cause for Welch to withdraw his guilty plea. The State and District Court's actions combined with evidence the defendant did not understand the convolutedness of his case sufficiently establish a basis for Welch to withdraw his plea.

¶29 Welch entered into a global plea agreement to resolve 10 charged offenses—six counts of deceptive practices and four counts of theft by deception. Although the plea agreement accurately set forth the potential penalties for each of the counts, the plea agreement also provided for sentences in excess of the maximum penalty for four of the 10 counts. The District Court imposed sentences well beyond those recommended in the plea agreement, well in excess of the maximum sentences allowed by law on four of the 10 counts, and when considered as a whole imposed sentences more commensurate with a

13

sentence for a violent assault or rape than for property offenses—50 years in MSP followed by 50 years of probation. Appeal ensued and the parties stipulated to remand. Upon remand, Welch sought to withdraw his guilty pleas. The District Court denied his motion and ultimately sentenced Welch to the maximum sentence allowed by law for the four counts of theft by deception.

¶30 Before judgment, a trial court may, "for good cause shown," permit withdrawal of a guilty plea and substitute it with a not guilty plea. Section 46-16-105(2), MCA. " 'Good cause,' as used in 46-16-105(2), MCA, includes the minimal constitutional requirement that a guilty plea be voluntary and intelligent." *State v. Deserly*, 2008 MT 242, ¶ 11, 344 Mont. 468, 188 P.3d 1057; *see State v. Lone Elk*, 2005 MT 56, ¶¶ 13, 17, 326 Mont. 214, 108 P.3d 500. In *Lone Elk*, we adopted the voluntariness standard set forth by the U.S. Supreme Court in *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970): If the court, the prosecutor, his own counsel, or some other party, induced the plea, however slightly, by threats or promises; misrepresentation, including unfulfilled or unfulfillable promises; or "promises . . . having no proper relationship to the prosecutor's business (e.g. bribes), that evidence indicates involuntariness." *Lone Elk*, ¶ 21; *Deserly*, ¶ 15.

> There can be no plea bargain to an illegal sentence. Even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law. Thus, when a defendant has entered a plea bargain contemplating an illegal sentence, the defendant is generally entitled to withdraw the guilty plea. Because the plea bargain is based on a promise the trial court lacks authority to fulfill, and the defendant was induced to plead guilty by that promise, plea withdrawal is necessary to return the parties to their initial positions.

14

*Deserly,* ¶ 16 (citing *United States v. Greatwalker*, 285 F.3d 727 (8th Cir. 2002)).  In determining whether a guilty plea is voluntary, we consider whether at the time it was entered the defendant was induced to do so by any of the circumstances contemplated by *Brady* and *Lone Elk*.  "What occur[s] subsequent to [the] change of plea does not determine whether the plea was voluntary at the time it was entered."  *Deserly*, ¶ 18.

¶31     There are exceptions to the general rule that the defendant is entitled to withdraw his guilty plea if he entered the plea pursuant to a plea bargain which contemplated a sentence subsequently determined to be illegal or unauthorized.  *Greatwalker*, ¶ 21.

¶32     *Greatwalker* explains the exception to the general rule:

> Withdrawal of the plea may be unnecessary when the agreed-on sentence exceeds the sentence authorized by law and the government accepts a sentence reduced to the legal term, when the sentence can be reconciled with the plea agreement or otherwise corrected to give the defendant the benefit of the bargain, or when the defendant is willing to accept a legal sentence in place of the promised one.

*Greatwalker*, 285 F.3d at 730.  The Opinion misapplies *Greatwalker* by concluding it provides that withdrawal of a plea is unnecessary if one of three conditions is met—(1) the government accepts a sentence reduced to the legal term, (2) when the sentence can be reconciled with the plea agreement or otherwise corrected to give the defendant the benefit of the bargain, or (3) when the defendant is willing to accept a legal sentence in place of the promised one.  This disjoined interpretation eradicates any requirement that the defendant's plea be voluntary or intelligent or that he receive the benefit of his bargain so long as the State agrees to a sentence reduced to the legal term.  A more correct application of *Greatwalker* is that a withdrawal of the plea may be unnecessary in two circumstances

when the agreed-on sentence exceeds the sentence authorized by law: (1) the government accepts a sentence reduced to the legal term and the sentence can be reconciled with the plea agreement or otherwise corrected to give the defendant the benefit of the bargain, or (2) the defendant is willing to accept a legal sentence in place of the promised one.

¶33    Here, the exception of *Greatwalker* is inappropriate.

¶34    Welch, upon the counsel and advice of his appointed counsel, initially agreed to the joint recommendation of a sentence which was illegal. Accordingly, in the interest of justice, Welch should have been able to withdraw his plea and start anew. Instead, the State substituted its own judgement for that of Welch and, in essence, argued that a three-year sentence is better than a 10-year sentence. Such an argument assumes Welch fully understood the charges against him at the outset, entered the plea knowingly, voluntarily with no inducement, however slight, and intelligently, and having done so is agreeable to resentencing to a lesser sentence—or as the Opinion sums "[a] maximum three-year sentence rather than the [ten-year sentence with five years suspended] that Welch originally agreed to put Welch in a better position than if his initial plea agreement was legally enforceable." Opinion, ¶ 23. While a lesser sentence may have put Welch in a better position than when he was sentenced to a longer, illegal sentence, such does not make his initial plea voluntary or intelligent and it does not signify his willingness to accept a legal sentence rather than withdrawal of his original guilty pleas. From the record, it is clear Welch did not knowingly, voluntarily, and intelligently enter into the original plea agreement as evidenced by agreeing to illegal sentences. Welch entered the plea agreement to resolve all 10 of his charges and, upon the advice and counsel of his attorney, agreed to

16

illegal sentences, which his counsel promised to resolve. He also agreed to plead to an offense for which he had already pled guilty and been sentenced. It is clear he did not fully understand the charges against him, the penalties associated therewith, or his options. Nor did he appear to understand that in exchange for his guilty pleas, he would or could receive no benefit whatsoever. It was inappropriate to separate out only the illegal sentences and resentence on those offenses only as the plea agreement was entered into on a global rather than a piecemeal basis. It is unknown whether Welch would have agreed to plead to all of the charges, had he fully understood the charges and the maximum possible penalties associated with them, his option to go to trial, or the fact that he received no benefit whatsoever from the plea agreement. Obviously when confronted at the resentencing hearing, after his motion to withdraw his guilty pleas had been denied, as to whether he would prefer to receive a lesser sentence compared to a greater one, Welch indicated he preferred the lesser sentence. But, by his motion to withdraw his guilty pleas, he had already clearly set forth his preference to vacate the plea agreement providing for illegal sentences and no other benefit and withdraw his guilty pleas. Three years may be a shorter sentence, but it is still the maximum sentence allowed by statute, involves no negotiation, and confers no benefit of any bargain on Welch.

¶35     Not only is it clear Welch did not understand the implications and effects of the original plea agreement, upon resentencing his confusion did not abate:

> Q. Okay. So you're not wanting to withdraw your guilty plea, it sounds to me. It sounds like you're wanting to correct some errors in what you think is restitution amounts. Or -- am I hearing you correctly?
>
> A. Well, I want to withdraw my guilty plea and get everything corrected.

17

. . .

> Q. (By Ms. Gallagher) So, Mr. Welch, finally, I mean I heard you say that you were not induced -- or you could not have been induced by us promising to recommend a much harsher sentence in order to change your plea. Is that what I heard you say?
>
> A. I'm not understanding.
>
> Q. Okay. You had said everyone knows that 10 is way more than 3; and so if the plea agreement said 10 years, you wouldn't be jumping all over that and say: Yeah, I want that, so I'm going to change my plea to guilty. Right? Because it's 10 years. Does that make sense? I don't want 10 years, I want the max 3. Does that make sense?
>
> A. Um, sure.

The State, now knowing the maximum sentence length was much shorter than 10 years, argued for the maximum sentence of three years without affording Welch any opportunity to reconsider his choices upon learning his initial sentences were illegal.

¶36 The essence of a plea agreement is that the defendant agrees to plead guilty to the charges against him in return for something from the State. Here, Welch was bound by his initial willingness to plead guilty, but the State offered nothing in return as it recommended the maximum sentence length and dismissed no charges upon resentencing.

¶37 In addition to the illegal sentences rendering Welch's plea involuntary, Welch also testified to not signing the plea agreement in complete understanding of what it meant. Welch allegedly noticed one page of the agreement delineated the maximum sentence length of three years, however on another page the attorneys jointly recommended a maximum sentence length of 10 years. Welch testified that after he signed the agreement, his attorney advised that he would solve the issue and to not say anything at the sentencing

18

hearing. However, the attorney did not resolve the issue, and Welch, following the directives of his attorney, did not speak up in court. This transaction seemingly added to Welch's confusion and misunderstanding of the plea agreement. By trusting his attorney to handle the issue, Welch was further induced to enter guilty pleas. Further demonstrating Welch's incomplete understanding of the proceedings is the fact he initially agreed to plead guilty to a crime he was already sentenced for in another jurisdiction.

¶38  I would reverse the District Court's Order. There is good cause for Welch to withdraw his guilty pleas. Not only was the initial sentence illegal, but the record clearly shows Welch did not have a full understanding of the proceedings because he signed the plea agreement despite the discrepancy in sentence lengths, trusting his counsel would solve the issue. Welch also signed the plea agreement not understanding he had already been convicted of and sentenced for one of the charges he was agreeing to plead guilty to. Finally, Welch received nothing in exchange for his agreement to forego trial and plead guilty. No charges were dismissed and in fact he plead to a charge for which he had already been sentenced. He initially received an illegal sentence and rather than being afforded the opportunity to withdraw his guilty pleas, upon sentencing received the maximum sentence receiving no consideration at all for his guilty pleas. That the District Court could have, in its discretion imposed the sentence it did regardless of any plea agreement, does not make Welch's pleas to have been made knowingly, voluntarily, or intelligently. The facts and particularities of this case are sufficient to allow Welch to withdraw his guilty pleas and the exceptions in *Greatwalker* are not appropriate. As such, I dissent.

/S/ INGRID GUSTAFSON


Justice Laurie McKinnon joins in the dissenting Opinion of Justice Gustafson.


/S/ LAURIE McKINNON